**UNITED STATES of America**

v.

**James F. JOHNSON, Appellant.**

**No. 85–5131.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 16, 1986.

Decided Sept. 30, 1986.

---

Matthew C. Leefer, Boonsboro, Md., appointed by the Court, for appellant.

Paul L. Colby, Asst. U.S. Atty., a member of the Bar of the District of Columbia, pro hac vice by special leave of Court, with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and William J. O'Malley, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Royce C. Lamberth, R. Craig Lawrence and Patricia

D. Carter, Asst. U.S. Attys., Washington, D.C., also entered appearances, for appellee.

Before MIKVA and BORK, Circuit Judges, and HAROLD H. GREENE,* District Judge.

Opinion for the Court filed by District Judge GREENE.

HAROLD H. GREENE, District Judge:

Appellant James F. Johnson was convicted by a jury of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a).[1] He challenges this conviction on two grounds. First, he argues that his motion to suppress the narcotics, narcotics paraphernalia, and a firearm seized from his residence was improperly denied by the trial court. Second, he challenges the admission of the written post-arrest statement of a prosecution witness.

I

Prior to his arrest, appellant operated a variety store at 807B Florida Avenue, N.W., in Washington, D.C. The store was located at street level, and appellant occupied an apartment directly above the store. The apartment was reached by a separate doorway and staircase leading to the second floor, and it used a separate address, 807A Florida Avenue, N.W. The apartment could not be reached from inside the store.

In the evening hours of August 28, 1984, officers of the Metropolitan Police Department executed a search warrant at 807B Florida Avenue.[2] As a search of the variety store proceeded, an officer stationed in the alley at the rear of the building observed appellant dropping a brown paper bag from the second floor apartment to a lower portion of the roof. Despite the officer's instruction to appellant to "halt," Johnson withdrew from the window and closed it. The officer, using his hand-held radio, informed the search team inside the store of his observations. Four members of the team thereupon forced open the door to 807A Florida Avenue, climbed the stairway, forced open a second door, and entered the apartment. They searched the apartment and the area below the window, seizing several bags from the roof and from cubbyholes located between the outside wall of the building and two air conditioning units. The bags were found to contain narcotics, narcotics paraphernalia, and a firearm, and all of the seized items were introduced over objection at Johnson's trial.

■ Warrantless entry of premises is justified only when exigent circumstances make an immediate search imperative. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948). The burden is on the prosecution to demonstrate that exigent circumstances were present. *United States v. Free*, 437 F.2d 631, 633 (D.C.Cir.1970).

The test for exigent circumstances is whether the police had "an urgent need" or " 'an immediate major crisis in the performance of duty afford[ing] neither time nor opportunity to apply to a magistrate.' " *Dorman v. United States*, 435 F.2d 385, 391 (D.C.Cir.1970) (*quoting District of Columbia v. Little*, 178 F.2d 13, 17 (D.C.Cir. 1949)).[3]

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The same jury acquitted him of two other charges: carrying a firearm during the commission of a felony, in violation of 18 U.S.C. § 924(c)(2), and possession of a firearm after conviction of a felony, in violation of 18 U.S.C. § 1202(a)(1) Appendix.

2. The legality of that search warrant is not contested.

3. Some of the factors that have been applied in assessing whether a need of this magnitude is present include (1) the time necessary to obtain a warrant; (2) the reasonableness of the officer's belief that contraband may be lost or destroyed; (3) indications that the suspects are aware of the police presence; and (4) the ease with which the suspected contraband could be destroyed. *United States v. Rubin, infra,* 474

■ Clearly, exigent circumstances were present in this case. The need to preserve evidence that may be lost or destroyed if a search is delayed is and has long been recognized as an exigent circumstance.[4] In the instant case, the officers were engaged in a search for narcotics. It is commonly known that narcotics can be easily and quickly destroyed while a search is progressing, and that "efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." *United States v. Rubin,* 474 F.2d 262, 268–69 (3d Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). *Accord, United States v. Manning,* 448 F.2d 992, 998–99 (2d Cir.) (*en banc*), *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971). This general experience was buttressed in the instant case by appellant's highly unusual and suspicious action of dropping a paper bag from his window to the roof below. To any even minimally experienced police officer this provided evidence that appellant was aware of the police presence and was seeking to dispose of contraband. It is only common sense to conclude that a suspect in this situation could and would dispose of remaining narcotics[5] in the bathroom of the apartment or through some other means if given the time to do so.

In *United States v. Davis,* 461 F.2d 1026 (3d Cir.1972), the Third Circuit was presented with similar facts. In that case, a bag of heroin was thrown from an apartment window as federal agents approached the building. When the agents approached the apartment itself, running and scuffling noises were heard inside. "The agents were entitled," the Third Circuit ruled, "to rely on their knowledge of the operations of narcotics traffickers that such noise might well indicate an effort to dispose of the narcotics....." *Id.* at 1033. The actions of Johnson, which included dropping a paper bag from the window, and retreating inside and closing the window despite a policeman's order to remain stationary, likewise indicated a probability that contraband would be destroyed.

Viewing the case with reference to the totality of the factual circumstances, *see Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *United States v. Blake, supra,* 484 F.2d at 56, we have no difficulty in concluding that the officers who conducted the search could "reasonably conclude," *United States v. Rubin, supra,* 474 F.2d at 268, that material evidence was threatened with imminent destruction by the occupant or occupants of 807A Florida Avenue, and that the District Court was therefore correct in denying the motion to suppress.

II

Appellant's second point is more problematic, and a recitation of the events preceding the admission of the signed, post-arrest statement of one David Halmon as part of the government's rebuttal evidence is necessary.

It was the prosecution's theory that appellant used the variety store at 807B Florida Avenue as a front—or at least as a meeting place—for the distribution of cocaine to various individuals who would then sell these narcotics "on the street." In support of this theory, the government introduced in its case-in-chief various bags seized from 807A Florida Avenue, which contained a total of sixty-one individual plastic packets of cocaine packaged as

F.2d at 268; *Dorman v. United States, supra,* 435 F.2d at 391–96.

**4.** *See, e.g., Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966); *United States v. Allison,* 639 F.2d 792, 794 (D.C.Cir.1980); *United States v. Canada,* 527 F.2d 1374, 1379 (9th Cir.1975), *cert. denied,* 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976); *United States v. Blake,* 484 F.2d 50, 54 (8th Cir.1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Rubin,* 474 F.2d 262, 268 (3d Cir.1973), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *Cipres v. United States,* 343 F.2d 95, 98–99 (9th Cir.1965), *cert. denied,* 385 U.S. 826, 87 S.Ct. 58, 17 L.Ed.2d 62 (1966).

**5.** There apparently were some narcotics in the bag which appellant disposed of through the window.

"wholes" or "halves" for street distribution. Latent fingerprints were recovered from several of the plastic bags, and a government expert testified that in eight instances the fingerprints could be identified as those of appellant. In addition, police officers testified about their search of 807A and 807B Florida Avenue and appellant's actions at that time.

The defense case consisted largely of testimony by bystanders who had been in the vicinity of 807A and 807B Florida Avenue during the search. Their testimony can be characterized as an attempt to minimize appellant's involvement and to discredit the testimony of the officers who claimed to have observed appellant. These witnesses, who could recognize appellant by sight, testified that they observed individuals who appeared to be fleeing the scene, that appellant was not among them, and that they had not observed appellant at the window of 807A Florida Avenue.

More significantly, the defense also called Tawanda Jackson, a twenty-year old employee of the variety store, who gave evidence regarding the store's legitimate business activities. In particular, she testified that the store sold "little ziploc plastic bags," and that appellant frequently handled the bags during inventory—testimony which offered an alternative explanation for the fingerprints, since the jury could infer that appellant had innocently given or sold the bags to third persons who then used them for cocaine distribution.

When it came time for the government's rebuttal, it called sixteen-year-old David Halmon as its witness. In a hearing held outside the presence of the jury, it was learned that Halmon had been arrested on August 15, 1984 (two weeks prior to appellant's arrest) in Johnson's variety store on a charge of possessing three packets of cocaine, and that at that time he had given the police a signed statement implicating appellant. Specifically, the statement included information to the effect that Halmon had been selling cocaine for "Jake" for about three weeks at the time of his arrest.[6] However, during the court hearing itself, Halmon refused to implicate appellant, and he stated that the cocaine he possessed on August 15 had come from his own "stash" and not from appellant. He acknowledged the signed statement as his own, but testified that he had falsely implicated appellant when he gave the statement.

Over defense objection, the trial court permitted Halmon to testify before the jury and—when he again refused to implicate appellant—it allowed the government to introduce and publish to the jury Halmon's post-arrest statement. Appellant challenges the decision to admit the statement on three grounds. First, he argues that the contents of the statement constituted inadmissible evidence of other crimes. Second, he claims that the statement itself constituted hearsay not within any hearsay exception.[7] Third, he contends that the statement was improperly bootstrapped into the record as a prior inconsistent statement. We address each argument in turn.

### III

Evidence of other crimes [8] committed by a defendant is generally inadmissible, but it may be admitted for certain specified purposes. Specifically, Fed.R.Evid. 404(b) provides that

Evidence of other crimes ... is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible for other purposes, such*

---

**6.** It was known that appellant James Johnson used the nickname "Jake."

**7.** In the alternative, appellant contends that as hearsay the statement could only be admitted to impeach, and that the trial court's failure to give an immediate cautionary instruction to the jury was reversible error.

**8.** Appellant's brief refers to the category of evidence known as "other crimes" evidence as *"Drew* evidence." The holding in *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964)—that other crimes evidence is not admissible to show a propensity to commit crimes of a similar nature—was formally adopted in Fed. R.Evid. 404(b).

*as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident* (emphasis supplied).

Specific intent is an essential element of a charge under 21 U.S.C. § 841(a) of possession of narcotics with intent to distribute, and the prosecution would have been justified in offering other crimes evidence in its case-in-chief to prove that appellant possessed the drugs found in his apartment with an intent to distribute. *United States v. Moore,* 732 F.2d 983, 989 (D.C.Cir.1984); *United States v. Harrison,* 679 F.2d 942, 948 (D.C.Cir.1982). *See United States v. Herron,* 567 F.2d 510, 514 (D.C.Cir.1977) (testimony regarding defendant's previous drug sales is evidence of an intent to distribute).

Similarly, there can be no doubt that the Halmon statement would be relevant in the sense of being helpful to the trier of fact as rebuttal to the defense case. Tawanda Jackson had provided testimony from which the jury could infer that appellant's store was an entirely legitimate business, and that there was an innocent explanation for the presence of appellant's fingerprints on bags of narcotics.[9] Once appellant sought to establish the legitimacy of his business operations, other crimes evidence was appropriate to demonstrate the illegitimacy of these operations.[10] Moreover, the trial court could properly conclude at that juncture that the probative value of Halmon's statement outweighed the concern that the jury might use that statement to

infer appellant's propensity for crime. As we have previously noted, "the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged." *United States v. Day, supra,* 591 F.2d at 861, 878 (D.C.Cir.1978). *United States v. DeLoach,* 654 F.2d 763, 770 (D.C.Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 366 (1981). That is the case here.[11] Thus, if Halmon had himself testified in the presence of the jury in conformity with the statement he gave to the police shortly after his arrest, that testimony would clearly have been admissible. However, as noted above, he did not do so, and his police statement was admitted instead. We will not discuss the evidentiary consequences of that circumstance.

## IV

The Halmon statement was hearsay, *see* Fed.R.Evid. 802, and it could not properly be admitted unless it fell within one of the exceptions to the hearsay rule. *See* Fed.R. Evid. 803, 804.

The government contends that Halmon's post-arrest statement is a statement against penal interest, and that it was therefore admissible under the exception contained in Fed.R.Evid. 804(b)(3). It is the government's theory that Halmon's statement to police, in which he indicated that he sold cocaine for Johnson, was an admission that Halmon himself had violated the law by distributing narcotics. This self-in-

---

9. For that reason, appellant is simply incorrect when he asserts in his brief that "[the] evidence adduced by the defense ... [did not] constitute [a] denial of involvement with drugs or ... warrant[ ] the presentation of David Halmon as a witness in rebuttal." Brief for Appellant at 29.

10. When the defendant has opened the door to a line of testimony, the prosecution will normally be allowed to explore other related facts and alternative inferences from the defendant's facts. *See United States v. Hall,* 653 F.2d 1002, 1006 (5th Cir.1981); *United States v. Dixon,* 593 F.2d 626, 630 (5th Cir.), *cert. denied,* 444 U.S. 861, 100 S.Ct. 126, 62 L.Ed.2d 82 (1979); *United States v. Delk,* 586 F.2d 513, 516 (5th Cir.1978); *United States v. James,* 555 F.2d 992, 998 n. 37 (D.C.Cir.1977); *United States v. Winston,* 447

F.2d 1236, 1240 (D.C.Cir.1971). At a minimum, that is a matter on which this Court will generally defer to the trial court, reversing the trial court's decision only in cases of "grave abuse." *See United States v. Fench,* 470 F.2d 1234, 1239 (D.C.Cir.1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973). Here, the other crimes evidence was closely connected to the evidence that the prosecution needed to rebut. Halmon had been arrested for selling narcotics in the very store that appellant sought to portray as a legitimate and innocent business enterprise.

11. The facts of this case are quite similar to those at issue in *United States v. Harrison, supra,* 679 F.2d at 948, where we upheld the admission of other crimes testimony.

criminating aspect of Halmon's statement, according to the prosecution, brings it within Fed.R.Evid. 804(b)(3).

That argument is not persuasive. Halmon's statement was made to police officers who had just arrested him on a serious narcotics charge. It is common knowledge that an arrestee can "curry[ ] favor with law enforcement authorities by implicating others in the offense." *United States v. Coachman,* 727 F.2d 1293, 1296 (D.C.Cir. 1984).[12] The drafters of Rule 804(b)(3), aware of this phenomenon, provided that a statement would be regarded as being against penal interest only if it "so far tended to subject [the declarant] to civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true." Fed.R.Evid. 804(b)(3). *See* Fed.R.Evid. 804 advisory committee note.

Halmon's post-arrest statement is suspect in that context. Halmon, a teenager, was arrested in possession of cocaine. It would be highly logical for him to "trivialize his own involvement," [13] by implicating appellant, an older man and owner of the store, as the kingpin in a drug operation. These circumstances enhance the possibility that Halmon's statements were wholly or partially fabricated, either on his own initiative or under the influence of the police. In short, this case presents the precise circumstances in which a statement against interest may be regarded as unreliable and for that reason not admissible as a statement against penal interest.

■ Nevertheless, appellant's present reliance on this rule is unavailable to him because his counsel failed to object to the statement on those grounds.[14] A defend-

ant is normally deemed to have waived any legal objections not actually articulated at trial. *United States v. Ruffin,* 575 F.2d 346, 355–56 (2d Cir.1978). When a waiver has occurred, the Court will not reverse other than in extraordinary circumstances "affect[ing] substantial rights and result[ing] in a miscarriage of justice." *United States v. Johnson,* 722 F.2d 407, 409 (8th Cir.1983).[15] *See United States v. Ruffin, supra,* 575 F.2d at 358–59; Fed.R. Evid. 103(a), (d).

■ We conclude that the error is not of this magnitude. In view of the other evidence in the case, including the seizure of substantial amounts of narcotics in Johnson's residence, the fact that those narcotics were packaged for sale, and police testimony placing him in actual possession of some of the narcotics before he dropped them from the window, the admission of the Halmon statement was an error harmless to appellant. *See, e.g., United States v. Raper,* 676 F.2d 841, 845 (D.C.Cir.1982); *United States v. Herron,* 567 F.2d at 513; *United States v. Reese,* 561 F.2d 894, 898 (D.C.Cir.1977). Even without the Halmon statement, "the 'minds of an average jury' would not have found the [prosecution's] case significantly less persuasive had the [statement] been excluded." *Schneble v. Florida,* 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972) (*quoting Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969)). *See United States v. Coachman,* 727 F.2d at 1297.

Appellant makes the further argument that if the Halmon statement was admissible at all, it was admissible only as a prior inconsistent statement of the witness, *see*

---

**12.** *See also Davis v. Alaska,* 415 U.S. 308, 317–18, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974) (defendant entitled to discredit prosecution witness's testimony by showing witness was a probationer and possible suspect).

**13.** *United States v. Coachman, supra,* 727 F.2d at 1297.

**14.** The only objection made was that the statement was inadmissible as constituting evidence of other crimes. Such an objection is obviously

not adequate to draw the trial court's attention to a hearsay problem.

**15.** The test requires that the error be "obvious ... or ... seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). *See United States v. Frady,* 456 U.S. 152, 163 nn. 13 & 14, 102 S.Ct. 1584, 1592 nn. 13 & 14, 71 L.Ed.2d 816, and cases cited therein.

Fed.R.Evid. 613(b), and that it was plain error not to give an immediate instruction to the jury cautioning it that the statement was admitted only on the issue of credibility, and not as substantive evidence. *See, e.g., United States v. McClain,* 440 F.2d 241, 246 (D.C.Cir.1971). As we discuss in Part III, *supra,* the contents of the statement would have been admissible not merely to impeach the witness' credibility but as substantive, other crimes evidence. It follows that an instruction limiting that statement to credibility questions would have been inappropriate. Beyond that, the fact is that the court gave the McClain credibility instruction in its final charge, and in that respect it afforded appellant an advantage he was not entitled to receive.[16]

### V

■ Appellant's final challenge to the Halmon statement is perhaps the most troublesome. Although Fed.R.Evid. 613(b) permits the admission of a prior inconsistent statement for various purposes (*see supra* ), it was entirely inappropriate for the prosecution to call Halmon to the stand when it well knew that his live testimony, unlike his prior statement, would be favorable to the defendant. It is reasonable to conclude that the prosecution called Halmon not for any testimony he could be expected to give, but for the sole purpose of bringing about the admission of a post-arrest statement that, as the prosecution well knew or should have known, was not independently admissible.[17] This conduct was improper.

There is no authority, in the Federal Rules of Evidence or elsewhere, suggesting that a party may on rebuttal call a witness—who the party knows will not offer any relevant evidence—and then impeach that witness by introducing, under Fed.R.Evid. 613(b), an earlier, hearsay statement favorably to that party's case. Indeed, the case law is to the contrary. Impeachment evidence is to be used solely for the purpose of impeachment, and it may not be "employed as a mere subterfuge to get before the jury evidence not otherwise admissible." *United States v. Morlang,* 531 F.2d 183, 190 (4th Cir.1975). *Accord United States v. Webster,* 734 F.2d 1191, 1192 (7th Cir.1984); *United States v. Miller,* 664 F.2d 94, 97 (5th Cir.1981), *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982); *United States v. DeLillo,* 620 F.2d 939, 946 (2d Cir.), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980); *Whitehurst v. Wright,* 592 F.2d 834, 839–40 (5th Cir.1979). This type of bootstrapping is impermissible, and it is "an abuse of the rule, in a criminal case, for the prosecution to call a witness that it [knows will] not give it useful evidence, just so it [can] introduce hearsay evidence against the defendant...." *United States v. Webster, supra,* 734 F.2d at 1192.

■ Nevertheless, we are constrained to hold that defense counsel's failure to object to introduction of the statement as impermissible bootstrapping constituted a waiver.[18] Applying the same threshold test for

---

**16.** Indeed, even if we were to rule that a cautionary instruction was required, the trial court's failure to give it immediately is not always reversible error. *United States v. Lewis,* 693 F.2d 189, 196–97 (D.C.Cir.1982).

**17.** The prosecution informed the court that the statement was being offered to impeach the credibility of its own witness by a prior inconsistent statement, pursuant to Fed.R.Evid. 607. *See United States v. Miller,* 664 F.2d 94, 97 (5th Cir.) *cert. denied,* 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982). But the live testimony of Halmon was not a surprise; he had made it plain during the hearing out of the jury's presence that he would not implicate appellant—quite the contrary.

**18.** Defense counsel did object to the presentation of Halmon's testimony on the ground that it did "not constitute rebuttal evidence to anything raised in the defendant's case." (Tr. II 355). It is unclear whether that objection was directed solely at Halmon's live testimony, solely at the statement, or at both the testimony and the statement. In any event, the objection was not sufficiently precise to draw the Court's attention to the bootstrapping question argued on this appeal. Appellant's present objection to the government's conduct, while meritorious, was plainly waived at trial. *See United States v. Ruffin, supra,* 575 F.2d at 355–56.

reversal that we employed in the context of defendant's failure to raise a hearsay objection (*see* Part IV, *supra* ) we conclude that in the present context, too, admission of the statement did not "substantial[ly] prejudice" appellant. *United States v. Lewis*, 693 F.2d 189, 197 (D.C.Cir.1982).

For the reasons stated, the judgment of the District Court and hence appellant's conviction are

*Affirmed.*