**W.C. PRUITT, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–88–086–CR.**

Court of Appeals of Texas,
Fort Worth.

May 4, 1989.
Rehearing Denied June 15, 1989.

Office of the Public Defender, and Ward W. Elmendorf [on appeal only], Wichita Falls, for appellant.

Barry Macha, Crim. Dist. Atty., and Rick L. Mahler, Asst. Crim. Dist. Atty., Wichita Falls, for State.

Before WEAVER, C.J., and HILL and FARRIS, JJ.

## OPINION

FARRIS, Justice.

This appeal involves the question of whether the State may impeach its own witness with a prior inconsistent statement when it has called the witness knowing that he will provide little or no testimony useful to the State. We hold the right to impeach one's own witness by use of a prior inconsistent statement does not extend to employment of such impeachment as a mere subterfuge to get otherwise inadmissible hearsay evidence before a jury.

We affirm the judgment of the trial court because we find beyond a reasonable doubt that the error in admitting the hearsay evidence in question was harmless.

W.C. Pruitt was convicted of aggravated robbery and assessed punishment of forty years imprisonment and a fine of $1,000. The State's case rested primarily upon the testimony of the witnesses Cox and Easley, who identified W.C. Pruitt and his brother, Raymond Pruitt, as the two black men who twice entered the Payless Shoe store where the witnesses were employed. The witnesses testified that when the Pruitts first entered the store, they acted in a suspicious manner which attracted the attention of both witnesses, and shortly after first leaving the store, the Pruitts returned and

forced Cox at knifepoint to open the cash register, taking money from the register as well as a pair of shoes from the store.

In his first point of error, W.C. complains the trial court erred in allowing the State to impeach its own witness by a prior inconsistent statement. In his second point of error, W.C. complains the trial court erred in permitting the State to introduce the testimony of the police officer who took the prior inconsistent statement of the witness. We find the trial court erred in admitting the impeachment evidence and the officer's testimony but find the errors were harmless because of the cumulative evidence identifying W.C. as a participant in the robbery.

James Ray Perkins was the stepfather of W.C. and Raymond Pruitt. During the police investigation of the crime, Perkins signed a written statement before Officer Keethler, stating he had driven W.C. and Raymond Pruitt to the shopping center where the Payless store was located. However, after that time, in a trial which resulted in a mistrial, Perkins testifed he drove two unknown black males to the scene of the offense but denied driving his stepsons. Before Perkins' testimony at the second trial, the trial court considered W.C.'s motion to deny the State permission to call Perkins as a witness. In a response to an inquiry as to what substantive fact the State hoped to prove through Perkins, the State replied:

MR. MAHLER: Well, at least we can offer—you know, he admits that—even in the last trial he admitted that he took two black males to the Payless. So we have that much that is consistent. We want to impeach him as to—If he testified as he did in the last trial of Raymond Pruitt—impeach him as to the identity of those people, because he has changed his story.

Counsel for W.C. offered to stipulate that a robbery occurred on the day and time in question and two black males were involved in the robbery but the State refused the stipulation insisting on its right to put the witness on the stand and to "have him tell in his own words in the presence of the jury what he did that day."

With the adoption of both civil and criminal rules of evidence 607, Texas abandoned the voucher rule requiring one who called a witness to vouch for that witness's veracity and denying the right to impeach one's own witness unless the party could show that he was surprised and injured by the witness's testimony. TEX.R.CRIM.EVID. 607 provides that the credibility of a witness may be attacked by any party including the party calling him. TEX.R.CRIM.EVID. 612(a) provides the method of impeachment by use of a prior inconsistent statement. A prior inconsistent statement which was not given under oath subject to the penalty of perjury at a trial hearing or other proceeding except a grand jury proceeding is hearsay, TEX.R.CRIM.EVID. 801, and not admissible except as provided by statute or by the rules of evidence. TEX.R.CRIM. EVID. 802.

W.C. contends the State's sole purpose in calling Perkins as a witness was to introduce his earlier hearsay statement to Keethler that he had driven W.C. and Raymond to the shopping center where the robbery occurred. In reply the State argues it was surprised by Perkins' testimony and its primary purpose for calling Perkins as a witness was to prove that he drove two black men to the site of the robbery and that he was the stepfather of W.C. and Raymond Pruitt. We reject the State's argument that it was surprised because, from the bench hearing prior to Perkins' testimony, it is clear that the State knew Perkins had retracted his statement to Keethler. There is nothing in the record to suggest that while he was on the witness stand under oath, he would retract the statement he had given at appellant's first trial and, adopt again the first account that he had told Keethler. We also reject the State's argument with regard to its primary purposes in calling Perkins as a witness. Under the circumstances of this case, neither the fact that Perkins would testify that he drove two black men, unknown to him, to the site of the robbery nor the fact that he was the stepfather of the appellant and Raymond Pruitt is sufficiently relevant to merit calling

the witness. Further, if the State's purpose was to prove by Perkins that he was related to the Pruitts and he had driven two unknown black males to the robbery scene, then there was no need to impeach him since he had so testified from the witness stand.

Having found the State called Perkins as a witness in order to introduce his hearsay statement, we must next determine whether the Rule 607 abandonment of the voucher rule, permitting either side to attack the credibility of its own witness, justified the admission of Perkins' hearsay statement that he drove the Pruitts to the robbery scene. There are apparently no Texas cases on point. However, there are a number of United States Courts of Appeals' opinions addressing this same question in connection with Federal Rule 607 which is substantially the same as Rule 607 of the Texas Rules of Criminal Evidence.

In *United States v. Hogan,* 763 F.2d 697 (5th Cir.1985), the Court held a prosecutor might not use a prior inconsistent statement under the guise of impeachment for the primary purpose of placing before the jury substantive evidence which was not otherwise admissible, noting that every circuit court to consider the question had ruled similarly—see citations, *id.* at 702. As noted by the Court in *Hogan,* the prosecution need not show it is surprised by the witness's testimony and may call and subsequently impeach a witness it knows may be hostile; however, the prosecution may not call a witness it knows to be hostile for the primary purpose of eliciting otherwise inadmissible impeachment testimony employing such a device as a subterfuge to avoid the hearsay rule. *Id.* at 702.

More recently, in *United States v. Johnson,* 802 F.2d 1459 (D.C.Cir.1986), in condemning the use of the right to impeach one's own witness as such a subterfuge, the Court described such a practice as impermissible bootstrapping and held it an abuse of the rule for the prosecution to call a witness that it knows will not give useful information just so it can introduce hearsay evidence against the defendant. *Id.* at 1466; *see also United States v. Webster,*

734 F.2d 1191 (7th Cir.1984); *United States v. Peterman,* 841 F.2d 1474 (10th Cir.1988). We believe the reasoning of the cited federal cases is sound and hold the trial court erred in permitting the introduction of Perkins' prior inconsistent statement and of Keethler's testimony with regard to that statement.

■ Having found the trial court erred in admitting the complained-of testimony of Perkins and the testimony of Keethler, we must determine whether their admissions were harmless. Because we find the cumulative testimony identifying W.C. Perkins as a participant in the robbery is so overwhelming, we find the error to be harmless. *See Smith v. State,* 734 S.W.2d 694, 696 (Tex.App.—Houston [1st Dist.] 1987, no pet.).

Easley was the first store employee to notice the Pruitts. She testified she arrived at work about 12:15 p.m. and saw two men standing outside the store. The men were 20 to 25 feet from her when they drew her attention. She later saw the same two men enter the store and she purposely watched them for approximately five minutes. When the two men returned to the store, she suspected a robbery and went to the back of the store to call the police.

Cox testified she first saw the two robbers enter the store at approximately 12:30 p.m. Cox's testimony described how she carefully observed the men for approximately five minutes as they posed as customers.

The two men left the store, returned at about 1:30, and Raymond acted out a farce of selecting and purchasing a pair of shoes. As Cox rang up the sale, W.C. pulled a knife and demanded the money from the cash register. During the robbery, Cox was separated from the robbers only by a counter approximately 24–30″ wide and carefully observed the robbers so she could later identify them. Neither Cox nor Easley had any difficulty in identifying W.C. Pruitt as one of the robbers.

Counsel for W.C. made a tepid cross-examination of Cox and Easley attempting to challenge their identification of W.C. by

proof that Cox had difficulty picking out Raymond from photographs, by Easley's mistaken estimates of the height and weight of the robbers and by questions of both witnesses with regard to vision problems. These efforts by counsel went for naught. Cox was certain in her identification of W.C. Pruitt. Easley admitted she was not good at "distance, and heights and approximating, that sort of stuff", but was as certain as Cox in her identification of W.C. Neither witness testified to any vision limitations which would affect her ability to identify the robbers.

Additionally, we note that the court's charge to the jury gave an instruction limiting their consideration of Perkins' and Keethler's testimony about the prior inconsistent statement to the purpose of impeachment, further instructing them that they could not consider the impeachment testimony as any evidence whatsoever of the guilt of the defendant.

In sum, because of the overwhelming evidence identifying W.C. Pruitt as a participant in the robbery and the court's instruction limiting the jury's consideration of the impeachment testimony, we find beyond a reasonable doubt the error in admitting the evidence of Perkins' prior inconsistent statement was harmless. *See* TEX. R.APP.P. 81(b)(2).

Pruitt's points of error are overruled and the judgment of the trial court is affirmed.