Becker v. State






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
RUTH CASTILLO,                                          )                  No. 08-04-00377-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  346th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20040D03200)

O P I N I O N

            Ruth Castillo appeals her conviction of three counts of child abandonment. A jury found
Appellant guilty and the court assessed her punishment on each count at confinement in a state jail
for 200 days, probated for 360 days. We affirm.
FACTUAL SUMMARY
            Appellant has three children, eleven-year-old Melanie, eight-year-old Angel, and six-year-old
Carlos. Appellant’s friend, Larry Chavez, had been living with the family for several months. On
March 3, 2004, a teacher at Lancaster Elementary School advised a social worker, Tammy Martinez,
that Angel was not in school to take the TAKS test. When Martinez learned that Angel’s siblings
were also absent, she decided to conduct a home visit. As Martinez exited the school at
approximately 8:20 a.m., she saw Melanie running into the building. Melanie told Martinez that she
had overslept and her two brothers were at home alone. Martinez then told Melanie that they were
going to the house to get the boys. During the drive, Melanie told Martinez that she had not seen
her mother since the previous evening. 
            They arrived at the house at approximately 8:35 a.m. and Martinez sent Melanie inside to get
Carlos and Angel ready for school. Martinez asked Melanie to look around to see whether her
mother or anyone else was at home. Protocol prevented Martinez from entering the house in the
absence of any adults. Melanie exited the house with her brothers in about ten minutes. No adult
came outside with the children and nothing indicated to Martinez that any adults were home. 
Melanie then told Martinez that no one else was inside. After returning to the school, Martinez
called the El Paso Police Department and Child Protective Services. CPS arrived shortly after 9 and
a police officer arrived at around 10. All three children were taken to the Child Advocacy Center. 
            Appellant and Chavez arrived at the school somewhere between 11:30 a.m. and 1 p.m. and
spoke with Martinez. Appellant told Martinez that Chavez had been at the house with the children,
but Chavez said nothing in support of this statement. 
            Detective Link Brown, who was assigned to the Crimes Against Children Division of the El
Paso Police Department, was contacted by a patrol officer at approximately 12:30 p.m. and advised
of the situation concerning the children. Brown met with Melanie at approximately 12:45 p.m. at
the Child Advocacy Center. Melanie told Brown that she had not seen her mother since 7 p.m. the
previous evening when she had left the children alone. When Melanie woke up at approximately
6:50 a.m. that morning, she and her brothers were still alone. Melanie got ready and walked to
school but she left her brothers asleep at home. After the interview, Brown went to the home and
found Appellant alone. The residence was extremely dirty and unkept, and the refrigerator contained
only salsa and tortillas. The sink held dishes which appeared to have been unwashed for several
days. Brown believed the circumstances indicated some kind of abandonment, but he also believed
that the adults were at home a significant amount of time to care for the children. Appellant
voluntarily accompanied Brown to the police station to discuss the case with him and she gave him
a written statement. 
            In her statement, Appellant admitted that she had gone to a bar where she worked with a
friend. She left the children with Chavez and told him that she would be gone a couple of hours. 
She had known Chavez for a year and he had been her roommate for about two months. Appellant
knew that Chavez had been out of jail for about one month but she did not know why he had been
in jail. She decided to stay out all night, but she was not able to talk to Chavez and tell him that she
would not be coming home. She hoped the children would be alright. When Appellant returned
home around 9 a.m. the following morning, she found Chavez but the children were not there. 
Appellant’s sister called and told her that a social worker had taken the children to school and
Appellant went there. Someone told her that Melanie had walked to school by herself but that the
other two children had been found at home asleep by themselves. Appellant returned home and
asked Chavez why he had left the children alone. He said that he had gone to pick up his car but he
did not explain why he had left the children alone. Appellant did not become angry because this was
the first time Chavez had ever left the children alone. 
            After taking Appellant’s statement, Detective Brown spoke with Chavez’s mother in an effort
to locate him. Mrs. Chavez confirmed that her son did not live with her because he did not “follow
the rules”. He had come to her house around noon that day, but she had not seen him for several
days prior to that visit. 
            Melanie testified at trial that she usually gets up for school at 6 or 6:30 a.m. after being
awakened by her mother or by an alarm clock. On the day in question, Melanie got up by herself
because Appellant was not home. Melanie had last seen her mother the previous evening at around
9 or 9:30 when Melanie went to bed, but Chavez was at the house. Melanie did not recall telling the
social worker that she had been alone the previous evening. Likewise, she did not recall telling the
police officer that she had last seen her mother at 7 p.m. the evening before or that Chavez was
usually at the house only on weekends. 
            Larry Chavez testified on Appellant’s behalf. Chavez had been living in Appellant’s house
since September 2003. He did not want to live with his mother following his release from the Texas
Youth Commission, and he had agreed to care for Appellant’s children in exchange for living in her
home. Chavez committed a possession of cocaine offense in January of 2003 and he was placed on
probation the following month. 
            Appellant regularly left the children with Chavez during the evening when she went to work. 
Chavez had been home on March 2, 2004 when Appellant left the children with him. When he
awoke the next morning around 6:30, the children were still asleep and Appellant was not at home. 
He decided that he would drive the children to school because it was a cool morning. When he could
not find the keys to Appellant’s van, he walked twenty minutes to his mother’s house to ask to
borrow her car. The children were still asleep when he left. Chavez argued with his mother for
approximately a half hour before she let him in the house, and he spoke with his mother and sister
for another thirty minutes about borrowing a car. Chavez returned to the house and found that the
children were not there. But he did not call the police; instead, he attempted to call Appellant’s sister
to find out if she had the children. Appellant came home and asked Chavez if he had taken the
children to school. He told her that he did not know where they were. After making some phone
calls and arguing for a while, they decided to go to the school. Chavez did not want to go at first
because he believed there was a warrant for his arrest and he feared that the police would be at the
school. Chavez nevertheless went with Appellant and they met with a woman counselor. Appellant
told the counselor that he had been at the house with the children.  
            The jury rejected Appellant’s defense and found her guilty of three counts of child
abandonment. Appellant timely filed a notice of appeal. 
SUFFICIENCY OF THE EVIDENCE 
            In Issue One, Appellant argues that the evidence is legally and factually insufficient to
support her convictions because the evidence failed to establish that she abandoned the children by
leaving them alone or that they were exposed to an unreasonable risk of harm.
Standards of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). We do not resolve any
conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do
so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d
839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the explicit and
implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a
light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies
in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843. Further, the
standard of review is the same for both direct and circumstantial evidence cases. Geesa, 820 S.W.2d
at 158.
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In Zuniga v.
State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), the Court of Criminal Appeals clarified the
factual sufficiency standard and linked the appellate standard of review to the beyond a reasonable
doubt burden of proof. There is only one question to be answered in a factual sufficiency review:
            Considering all of the evidence in a neutral light, was a jury rationally justified in finding
guilt beyond a reasonable doubt? Zuniga, 144 S.W.3d at 484. However, there are two ways in
which the evidence may be insufficient. Id. First, when considered by itself, evidence supporting
the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Id. Second,
there may be both evidence supporting the verdict and evidence contrary to the verdict. Id. 
Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough
that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should
not stand. Id. at 485. This standard acknowledges that evidence of guilt can “preponderate” in favor
of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. 
Id. Stated another way, evidence supporting guilt can “outweigh” the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard. Id. In performing this review,
we are to give due deference to the jury verdict, as well as to determinations involving the credibility
and demeanor of witnesses. Zuniga, 144 S.W.3d at 481.
Elements of the Offense
            A person commits the offense of child abandonment if, having custody, care, or control of
a child younger than 15 years, he intentionally abandons the child in any place under circumstances
that expose the child to an unreasonable risk of harm. Tex.Penal Code Ann. § 22.041(b)(Vernon
Supp. 2005). Under the Penal Code, “abandon” means to leave a child in any place without
providing reasonable and necessary care for the child, under circumstances under which no
reasonable, similarly situated adult would leave a child of that age and ability. Tex.Penal Code
Ann. § 22.041(a). This offense is a felony if (1) the actor abandons the child without intent to return
for the child or (2) the actor abandons the child under circumstances that a reasonable person would
believe would place the child in imminent danger of death, bodily injury, or physical or mental
impairment. Tex.Penal Code Ann. §§ 22.041(d)(2), (e). If the actor abandoned the child with the
intent to return, the offense is punishable as a class A misdemeanor. Id. §§ 22.041(d)(1).
            The three-count indictment alleged that Appellant, with intent to return, intentionally
abandoned each child in the residence without providing reasonable and necessary care in
circumstances under which no reasonable and similarly situated adult would leave a child of that age
and under circumstances that exposed each child to an unreasonable risk of harm. The court’s
charge tracked the indictment. 
Evidence of Abandonment Element
            Contrary to Appellant’s assertion, the State is not necessarily required to prove that she left
the children alone. Instead, the State must establish she left each child in a place without providing
reasonable and necessary care when no reasonable and similarly situated adult would leave a child
of that age and ability. While this could certainly be proven by evidence showing that a parent left
the children alone, such evidence is not necessarily required. 
             Taken in the light most favorable to the verdict, the evidence showed that Appellant left the
three children in the house alone overnight and with no concern how or even if they would get to
school the following morning. This left eleven-year-old Melanie with the adult responsibility of
caring for herself and her younger brothers and getting all three of them up and safely to school. As
some indication that young Melanie was not fully ready for this responsibility, she left her brothers
at home and walked to school alone. A rational trier of fact could have concluded beyond a
reasonable doubt that Appellant left the children without providing reasonable and necessary care
and that a reasonable and similarly situated adult would not have left the children alone overnight. 
The evidence is legally sufficient to support the abandonment element.
            A neutral view of the evidence also leads to a conclusion that the State proved the
abandonment element beyond a reasonable doubt. There is conflicting evidence whether Appellant
left the children alone that night or with her roommate with the understanding that she would return
in two hours. It was not unreasonable for the jury to give weight to Melanie’s initial statements to
Martinez and Detective Brown that she and her brothers had been left alone overnight or for the jury
to disregard Melanie’s trial testimony that Chavez had been present when she went to bed. Chavez’s
claim that he left the house early that morning and went to borrow his mother’s car is contradicted
by his mother’s statements to Detective Brown that she did not see Chavez until noon that day. A
rational trier of fact could have found that by leaving the children alone overnight, Appellant failed
to provide them with reasonable and necessary care and a reasonable and similarly situated adult
would not have left them under these circumstances. Even if the jury believed that Chavez had been
present that night, the evidence established that he left them alone at some point and did not return
until long after it was time for them to be in school. The evidence thus supports a conclusion that
leaving the children with Chavez did not constitute reasonable and necessary care and a reasonable
and similarly situated adult would not have left the children in his care. The evidence is factually
sufficient to support this element.
Unreasonable Risk of Harm
            Appellant also contends that the evidence is legally and factually insufficient to prove that
she abandoned the children under circumstances that exposed them to an unreasonable risk of harm. 
Pointing to the absence of detailed evidence regarding the circumstances in the home, she argues that
proof she left the children alone does not satisfy this element.
            To the extent Appellant contends that the State must prove that the children were in imminent
danger of harm, we disagree. Appellant was charged with the misdemeanor offense of child
abandonment, which only requires proof that the children were abandoned under circumstances that
exposed them to an unreasonable risk of harm. This offense is distinct from the second degree
felony offense of child abandonment which requires proof that the actor abandoned the child under
circumstances that a reasonable person would believe would place the child in imminent danger of
death, bodily injury, or physical or mental impairment. Tex.Penal Code Ann. § 22.041(e). The
separate offense of child endangerment similarly requires proof that the actor engaged in conduct
that placed a child younger than 15 years of age in imminent danger of death, bodily injury, or
physical or mental impairment. Tex.Penal Code Ann. § 22.041(c). The State was not required to
prove that Appellant’s children were in imminent danger but only that the circumstances exposed
the children to an unreasonable risk of harm.
            It is common knowledge that children, particularly those under the age of twelve as in the
case of these three children, require adult supervision, protection, and care. A parent’s duty of care
is codified in the Texas Family Code. See Tex.Family Code Ann. § 151.001(a)(2)(Vernon Supp.
2005)(a parent of a child has the duty of care, control, protection, and reasonable discipline of the
child). The question before us is whether Appellant’s failure to provide adult supervision,
protection, and care for her children exposed them to an unreasonable risk of harm. 
            The evidence, when taken in the light most favorable to the verdict, showed that Appellant
left her three young children alone overnight for approximately fourteen hours. Any of the children
could have been injured or fallen ill during Appellant’s lengthy absence. Other household
emergencies could have also posed an unreasonable risk of harm to the children. Cf. Schultz v. State,
923 S.W.2d 1 (Tex.Crim.App. 1996)(defendant was convicted by jury of child abandonment for
leaving nine and eleven-year-old children, who died in fire, alone for fifteen hours). There is also
evidence that the children did not have adequate food available to them. We conclude that the
evidence is legally sufficient to support the jury’s determination that leaving the children alone for
such a lengthy period of time exposed them to an unreasonable risk of harm. 
            We have also considered the evidence in a neutral light. Appellant contends that Melanie
was “quite capable of taking care of her brothers” because she got them up and dressed them for
school. The evidence cited by Appellant actually cuts against her argument given that Melanie got
her brothers ready for school only after being instructed to do so by an adult. We conclude that the
evidence pertaining to this element is not too weak to support the finding of guilt beyond a
reasonable doubt. Further, the contrary evidence is not so strong that the beyond-a-reasonable-doubt
standard could not have been met. Accordingly, the evidence is factually sufficient. Issue One is
overruled.
IMPEACHMENT EVIDENCE
            In Issues Two and Three, Appellant complains that the trial court erred by permitting
Detective Brown and Tammy Martinez to testify about statements Melanie made to them. Appellant
claims that the admission of this testimony violated her rights under the Confrontation Clause and
is subject to a Crawford v. Washington analysis. See Crawford v. Washington, 541 U.S. 36, 124
S.Ct. 1354, 158 L.Ed. 177 (2004). She also maintains that the State improperly questioned Melanie
for the sole purpose of eliciting impeachment testimony later during trial.
            Melanie testified at trial that her mother had left all three children with Chavez. At first, she
did not recall telling the police officer that her mother had left them alone since 7 p.m. the previous
evening. She later denied making this statement and claimed that she told the officer that her mother
left them with Chavez. Nor did Melanie recall telling the social worker that she had been alone since
the previous evening. The trial court overruled Appellant’s hearsay objections and permitted the
State to impeach Melanie with the prior inconsistent statements she had made to Detective Brown. 
Brown testified that Melanie had told him that she had last seen her mother at 7 p.m. on the previous
evening when Appellant had left the children alone. Also over Appellant’s hearsay objection, the
court allowed the social worker to testify about Melanie’s prior inconsistent statements. 
Confrontation Clause
            The State first contends that Appellant did not preserve her complaint that admission of this
evidence violated her rights under the Confrontation Clause. We agree. While Appellant raised a
hearsay objection, she did not make any objection at trial based specifically on the Confrontation
Clause or Crawford v. Washington. To preserve a complaint for appellate review, the party must
state the grounds for the desired ruling from the trial court “with sufficient specificity to
make the trial court aware of the complaint, unless the specific grounds [are] apparent from the
context . . . .” Tex.R.App. P. 33.1(a)(1)(A); Reyna v. State, 168 S.W.3d 173, 177 (Tex.Crim.App.
2005). This is to give the trial court an opportunity to rule on the defendant’s appellate rationale. 
Reyna, 168 S.W.3d at 178. It is also to give the trial court the opportunity to correct the error or
remove the basis for the objection. Reyna, 168 S.W.3d at 179. When a single objection
“encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause,
the objection is not sufficiently specific to preserve error.” Reyna, 168 S.W.3d at 179. A hearsay
objection does not preserve a Confrontation Clause complaint. Reyna, 168 S.W.3d at 179; Paredes
v. State, 129 S.W.3d 530, 535 (Tex.Crim.App. 2004). We conclude that Appellant failed to preserve
her complaints based on the Confrontation Clause and Crawford v. Washington.
Prior Inconsistent Statements
            Appellant next argues that the State should not have been permitted to impeach Melanie with
her prior inconsistent statements. A party may impeach a witness with a prior inconsistent statement. 
Tex.R.Evid. 613(a). But before a witness may be impeached with extrinsic evidence of a prior
inconsistent statement, the witness must be told the contents of the statement and the time and place
and the person to whom it was made, and must be afforded an opportunity to explain or deny the
statement. Id. If the witness denies making the statement, then extrinsic evidence of the prior
inconsistent statement may be offered. See McGary v. State, 750 S.W.2d 782, 786 (Tex.Crim.App.
1988). If the witness admits making the prior inconsistent statement, extrinsic evidence of the prior
inconsistent statement is inadmissible. Id.
            Appellant does not claim that the State failed to satisfy one of the requisites of Rule 613(a). 
Instead, she contends that the State improperly called Melanie for the primary purpose of eliciting
otherwise inadmissible evidence. Her argument implicates Rule 607 and the State’s ability to
impeach its own witness. Rule 607 expressly allows for the credibility of a witness to be attacked
by any party, including the party who called the witness. Tex.R.Evid. 607. Prior to the
promulgation of Rule 607, the law required a party calling a witness to establish “surprise” or
“injury” before the party could impeach its own witness. Barley v. State, 906 S.W.2d 27, 37 n.11
(Tex.Crim.App. 1995). Rule 607 abandoned the traditional “voucher” rule which prohibited a party
from impeaching its own witness and it dispensed with the surprise and injury exception to the
voucher rule which served as a prerequisite to impeaching one’s own witness. Hughes v. State, 4
S.W.3d 1, 5 (Tex.Crim.App. 1999).
            Citing Pruitt v. State, 770 S.W.2d 909 (Tex.App.--Fort Worth 1989, pet. ref’d), Appellant
argues that it is “improper to call a witness solely for the purpose of entering improper hearsay in
rebuttal.” In Pruitt, an aggravated robbery case, the defendant’s stepfather initially told police that
he drove the defendant to the scene of the robbery. Prior to trial, the stepfather recanted his
statement. At trial, the stepfather testified that he drove unknown men to the scene of the robbery. 
The State impeached the stepfather with his prior inconsistent statement. The Fort Worth Court of
Appeals reversed, holding that the State’s right to impeach its own witness with a prior inconsistent
statement did not extend to impeachment as a subterfuge to get inadmissible hearsay before jury and
did not permit admission of the stepfather’s prior inconsistent statement. Pruitt, 770 S.W.2d at 911. 
            The Court of Criminal Appeals considered the issue in Barley v. State, 906 S.W.2d 27, 37
(Tex.Crim.App. 1995), but held that the defendant did not preserve the complaint. Nevertheless, the
court noted via footnote that although a showing of “surprise” or “injury” was no longer required for
a party to impeach its own witness under Rule 607, the Fifth Circuit and the Fort Worth Court of
Appeals had held that the State could not impeach its witness with a primary inconsistent statement
if the State’s primary purpose was to place otherwise inadmissible evidence before the jury. Barley,
906 S.W.2d at 37 n. 11, citing United States v. Hogan, 763 F.2d 697, 702 (5th Cir. 1985) and Pruitt,
770 S.W.2d at 911. The court distinguished the facts in Barley because in Hogan and Pruitt, the
witness had recanted the statement in prior sworn testimony, and the State knew that the witness
would testify unfavorably at trial. Id. Such prior knowledge constituted evidence that the State’s
primary intent in calling the witness was to elicit otherwise inadmissible evidence. Id. But in those
cases where there was no evidence of the State’s primary intent, the court suggested that the trend
seemed to be “a subterfuge analysis conducted in the context of a Rule 403 balancing approach, that
the allowing of such ‘impeachment’ would be more prejudicial than probative.” Id. Because the
defendant there did not make a Rule 403 objection, the court did not address whether an analysis
under Rule 403 would yield a different result.
            In the wake of Barley, a number of intermediate appellate courts have carved an exception
to Rule 607 where the State is, or should be, aware that its witness would testify unfavorably.
Hughes, 4 S.W.3d at 4-5, n.5 (and cases cited therein). The Court of Criminal Appeals clarified the
issue in Hughes, squarely refusing to graft a surprise requirement onto the rule. Id. at 5. The State’s
knowledge that its own witness will testify unfavorably is a factor the trial court must consider when
determining whether the evidence is admissible under Rule 403. Id.
            When the State began questioning Melanie about the statements she made to Detective
Brown, Appellant objected based on hearsay and relevance. She lodged only a hearsay objection
when Brown testified about the prior inconsistent statements. When the State questioned Melanie
regarding the statements the child had made to the social worker, Appellant raised a hearsay
objection. Likewise, she only objected as to hearsay when the social worker testified about
Melanie’s prior inconsistent statements. These objections do not preserve a complaint that the State
called Melanie as a subterfuge for eliciting otherwise inadmissible evidence. Appellant made no
objection at trial based on Rule 403, nor does she make one here. Consequently, her contention is
not preserved. See Camacho v. State, 864 S.W.2d 524, 533 (Tex.Crim.App. 1993)(hearsay and
relevancy objections did not preserve for review issue of whether probative value of witness’
testimony was substantially outweighed by the danger of unfair prejudice). We overrule Issues Two
and Three and affirm the judgment of the trial court.


June 22, 2006                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)