**Leevi Berone BRAGGS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–96–00069–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 18, 1997.

Decided Aug. 19, 1997.

Michael P. Fosher, Houston, for Appellant.

Carmen Castillo Mitchell, Calvin A. Hartmann, Asst. Dist. Attys., Houston, for Appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Leevi Berone Braggs appeals from his judgment of conviction in a jury trial for the offense of aggravated robbery. He was sentenced to fifty years' imprisonment. Braggs contends that he received ineffective assistance of counsel, that the trial court erred by the admission of certain evidence, and that the jury charge was improper. We find no reversible error and affirm the judgment.

On March 31, 1996, at about 10:00 p.m., four masked men walked into a bowling alley. One man had a shotgun, and another had a revolver. After firing their weapons into the ceiling, they robbed the manager and a number of others at gunpoint. They escaped in a maroon van with over $2,000.00 in cash and various items taken from the patrons.

On the same date as this robbery, police were investigating the theft of a maroon van at the location of another bowling alley when they found a smashed vent glass on the ground near where the stolen van had been parked. Fingerprints were taken from the glass, but the glass itself was thrown away. The fingerprints on the glass were identified as Braggs'. An expert witness for Braggs testified that the throwing away of the glass was improper police procedure, but he admitted that the prints were Braggs'.

An employee of the bowling alley, Thomas May, was arrested for his involvement in the robbery. He testified that he and a friend, Jeffrey Brown, had discussed robbing the bowling alley, that the plan was for Brown to commit the robbery on March 31 after a signal from May, and that the robbery occurred as planned. May testified that he knew Brown and Braggs were involved and that Braggs was carrying the shotgun.

At the time of Braggs' arrest, a police officer found a watch in Braggs' room that was identified as belonging to one of the victims of the robbery. The officer testified that he had not been able to identify the owner of the watch until the day of trial.

Rodney Dukes testified that Braggs had a conversation with him regarding a robbery that occurred at a bowling alley, but he denied that Braggs had admitted to participating in that robbery. Dukes also denied that he had told police officer Glenn Smart that Braggs had admitted to him that he participated in the robbery.

Officer Smart testified that Dukes informed him that Braggs had told him he had participated in a bowling alley robbery that was set up by Brown and May, that they had obtained a van to use in the robbery, and that he, Braggs, had carried a shotgun during the robbery.

Braggs contends that he received ineffective assistance of counsel at trial in several respects. The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This standard was adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). In *Strickland*, the Supreme Court admonished that a claimant must prove that counsel's representation so undermined the "proper functioning of the adversarial process that the trial cannot be relied on having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.

To prevail, Braggs must prove: (1) that his counsel's representation was deficient; and (2) that the deficient performance prejudiced his defense. This means Braggs must prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *McFarland v. State*, 845 S.W.2d 824, 842 (Tex.Crim.App. 1992).

■ The review of counsel's representation is highly deferential; thus, we indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The burden is on the appellant to overcome that presumption by identifying the acts or omissions of counsel that are alleged to have constituted the ineffective assistance and then to affirmatively prove that they fell below the professional norm for reasonableness. Then, the appellant must prove that counsel's errors, judged by the totality of the representation, denied him a fair trial. Merely showing that they had some conceivable effect on the proceedings is inadequate. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067–68; *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996).

■ Braggs first contends that his counsel was ineffective because he called an expert witness who identified fingerprints taken from the vent window of the stolen van as his. The defense attempted, through this

witness, to cast doubt on the verity of the fingerprints. Counsel suggested through his questions and through argument that the fingerprints were not actually taken from the vent window of the van, and that the officers should not have thrown the window away after taking the fingerprints, but should have retained it for later analysis by defense experts. This is a legitimate trial strategy and does not reflect incompetence by counsel. *See Chambers v. State,* 903 S.W.2d 21, 33 (Tex.Crim.App.1995). This contention of ineffective assistance of counsel is overruled.

Braggs next contends that the court should not have admitted a gold-colored watch into evidence. The arresting officer, Glenn Smart, testified that while arresting Braggs he allowed him to go to his bedroom and get some shoes, and while accompanying him he saw a gold watch in plain view on a night stand. The officer knew that several gold watches had been taken during the robbery, so he took the watch in order to determine if it was stolen. Jose Garza, a victim, identified the watch as his.

Before this watch was admitted into evidence, the court conducted a hearing outside the presence of the jury, apparently on Braggs' motion to suppress this evidence. Following that hearing, the watch was admitted into evidence over the objection of Braggs' counsel that it was seized by the officer without a search warrant.

At a suppression hearing, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Covarrubia v. State,* 902 S.W.2d 549, 553 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). The trial court may accept or reject any or all of the witnesses' testimony. *Covarrubia,* 902 S.W.2d at 553. We do not engage in our own factual review. Instead, viewing the evidence in the light most favorable to the trial court's ruling, we consider only whether the trial court improperly applied the law to the facts. *Romero,* 800 S.W.2d at 543; *Covarrubia,* 902 S.W.2d

at 553. Absent a showing of an abuse of discretion, the trial court's findings should not be disturbed. *Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985); *Covarrubia,* 902 S.W.2d at 553.

The State relies on the "plain view" doctrine to justify seizure of the watch. That doctrine requires that: (1) law enforcement officials have a right to be where they are, and (2) it must be immediately apparent that the item seized constitutes evidence (that is, there is probable cause to associate the item with criminal activity). *Ramos v. State,* 934 S.W.2d 358, 365 (Tex.Crim.App.1996). Discovery of the seized item need not be inadvertent. *Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

The "immediately apparent" prong of the plain view analysis does not require actual knowledge of incriminating evidence. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). "[T]he focus is whether the officer has probable cause to believe that the evidence discovered is associated with criminal activity." *Joseph v. State,* 807 S.W.2d 303, 308 (Tex.Crim.App. 1991); *Fields v. State,* 932 S.W.2d 97, 107 (Tex.App.-Tyler 1996, pet. ref'd).

In this case, the officer testified that he knew that gold watches were stolen in the robbery. It is within the range of reasonable disagreement for the trial court to conclude that the testimony concerning the appearance of the watch matched the general description of the stolen items provided probable cause for the officer to believe that the item was associated with the robbery. We cannot say that the trial court abused its discretion by its apparent overruling of the motion to suppress. This point of error is overruled.

Based upon the seizure of the watch and its admission into evidence, Braggs next contends that the portion of the jury charge providing an instruction pursuant to Article 38.23(a) of the Texas Code of Criminal Procedure[1] was erroneous and that

---

1. TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.1997) provides that:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the

failure to obtain a proper charge or object to the charge as given constitutes ineffective assistance of counsel. The jury charge tracked the statutory requirement precisely. Braggs argues that the charge was inadequate because it did not specify the evidence at issue (the watch), provide any definition of probable cause, or otherwise apply the appropriate legal concepts to the evidence presented. The trial court is to provide the jury with both an abstract statement of the law and an application of that abstract statement to the evidence in the case. *Riley v. State*, 830 S.W.2d 584, 586–87 (Tex.Crim.App.1992). This requirement applies to defensive issues as well as to the law of the offense. *See Beggs v. State*, 597 S.W.2d 375, 379–80 (Tex. Crim.App. [Panel Op.] 1980).

This Court recently addressed this issue in *Davis v. State*, 905 S.W.2d 655, 663–64 (Tex. App.—Texarkana 1995, pet. ref'd). As in *Davis*, the instruction here consists only of an abstract proposition of law drawn directly from Article 38.23. The jury charge does not instruct the jury on the law governing probable cause. The charge does not apply the legal concept to the evidence involved, nor does it ask the jury to resolve the disputed fact issues that either justify or invalidate the officer's conduct. *Id.* The charge is defective.

■ However, a finding of error does not end, but rather begins this Court's inquiry. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex.Crim.App.1985)(opinion on reh'g). The trial court, on its own motion, inserted the instruction tracking Article 38.23. The statement of facts shows that defense counsel did not request a more specific charge. The charging error is therefore not preserved for review on appeal. In this situation, an accused will obtain a reversal only if the error is so egregious that he was deprived of a fair and impartial trial. *Almanza*, 686 S.W.2d at 171.

■ In our review, we determine the actual degree of harm in light of the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Id.* Braggs has no complaints about the remainder of the jury charge, which correctly charges the jury on the elements of the offense.

There was no conflict in the evidence setting out the officer's actions. The only question in this context involved whether the officer had probable cause to take the watch. Counsel for both parties discussed the propriety of the officer's conduct during closing arguments, with the defense concentrating on the conspiracy aspect of the late-arriving owner of the watch and the defendant's testimony explaining his possession of the watch.[2] The evidence does provide a direct physical link between Braggs and the robbery that is otherwise not present in this prosecution. However, evidence of his presence at the robbery was not based upon his possession of the watch, but upon the testimony of an accomplice witness and a third party.

Further, we have previously concluded that the court did not err by denying the motion to suppress this evidence. The jury's decision was therefore based upon admissible evidence. After considering the entire charge, the evidence, and the arguments of counsel, we find that the erroneous instruction under Article 38.23(a) did not cause Braggs egregious harm and no reversible error has been shown. Therefore, we cannot say that counsel's failure to secure a proper Article 38.23(a) instruction was so serious that it prejudiced Braggs' defense. Neither can we say that there is a reasonable probability that but for this deficiency the result of the trial would have been different. *McFarland*, 845 S.W.2d at 842. These points of error are overruled.

Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

2. Braggs testified that Mays gave him the watch in return for four free haircuts a few days before he was arrested and testified that he had no knowledge of the robbery.

Braggs next contends that he received ineffective assistance of counsel because trial counsel did not object on constitutional grounds to the admission into evidence of a statement allegedly made by the witness Rodney Dukes. The State called Dukes as a witness and asked him whether Braggs had ever told him that he was involved in the robbery. Dukes said that he had not, but that they had talked about the robbery. State's counsel then asked Dukes whether he had given a different story to Officer Smart, and Dukes said that he had not, but that Officer Smart might have misunderstood him. Dukes was asked whether he had contacted the police, and he said no.

The State then put Officer Smart on the stand, and he testified that Dukes had contacted him and had come downtown to talk to him. He testified that Dukes told him at that time that Braggs had told him he committed the robbery and had told him who the other participants were. He also testified that Dukes was a long-time resident of the area and that Dukes had asked him to keep his name out of things.

Braggs contends on appeal that his counsel was inadequate because he did not object to the admission of this testimony on constitutional grounds. He acknowledges that the acts or declarations of an accused from which guilt may be inferred are admissible as an admission by a party. TEX.R.CRIM. EVID. 801(e)(2). However, in the present case, Dukes testified that Braggs made no such admission to him. The complained-of testimony, then, must be that of the officer who stated that Dukes told him that Braggs had said he robbed the bowling alley. The officer was once removed from actual contact with the statement by Braggs. Therefore, Rule 801(e)(2) does not authorize admission of his testimony. Dukes testified as a State's witness, but did not testify in accordance with the statement initially given to the police. The State then attacked his credibility through evidence of earlier statements made by Dukes to a policeman. TEX.R.CRIM. EVID.

607 provides that the credibility of a witness may be attacked by any party, including the party calling him.[3]

A prior inconsistent statement which was not given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding except a grand jury proceeding, is hearsay, TEX.R.CRIM. EVID. 801, and not admissible except as provided by statute or by the rules of evidence. TEX.R.CRIM. EVID. 802; *Pruitt v. State*, 770 S.W.2d 909, 911 (Tex. App.—Fort Worth 1989, pet. ref'd). TEX. R.CRIM. EVID. 612(a) allows impeachment of a witness by use of a prior inconsistent statement, without the requirement of Rule 801 that the prior statement be made under oath. Rule 612(a) also provides that before the witness may be impeached by extrinsic evidence of a prior inconsistent statement he must be informed of its content, the time and place where it was made, and to whom the statement was made. *McGary v. State*, 750 S.W.2d 782, 786 (Tex.Crim.App.1988); *Broden v. State*, 923 S.W.2d 183, 188 (Tex.App.-Amarillo 1996, no pet.). All of those requirements were met in this case, and Dukes unequivocally denied making the statement.

We now look to see whether Rules 607 and 612(a) permit the admission of Smart's testimony recounting Dukes' earlier statement. This issue was addressed in *Pruitt*, 770 S.W.2d at 910–11. In that case, the driver of a getaway car changed his story between his initial statement to police and the time of trial to eliminate any mention that his sons were the robbers. The Fort Worth Court concluded, after a review of federal cases, that to call a witness for no other reason than to have the opportunity to introduce impeachment testimony which was not otherwise admissible constituted a subterfuge designed to avoid the application of the hearsay rule (citing *United States v. Johnson*, 802 F.2d 1459 (D.C.Cir.1986) (describing such a practice as impermissible bootstrapping and holding it an abuse of the rule for the prosecution to call a witness that it knows will not give useful information just so it can introduce hearsay evidence against the defen-

---

**3.** This rule is typically used in tandem with TEX. R.CRIM. EVID. 105, allowing otherwise inadmissible testimony to be introduced only for a limited purpose-rather than for the truth asserted in the

statement. *See Rosales v. State*, 932 S.W.2d 530, 537 (Tex.App.—Tyler 1995, no pet.); *Sandow v. State*, 787 S.W.2d 588, 595 (Tex.App.—Austin 1990, pet. ref'd).

dant), and *United States v. Hogan*, 763 F.2d 697 (5th Cir.1985)).

The conclusions of *Pruitt* were discussed by the Texas Court of Criminal Appeals in *Barley v. State*, 906 S.W.2d 27, 37 n. 11 (Tex.Crim.App.1995). There the court distinguished *Barley's* facts from those of *Pruitt* and the cases cited therein where the witness had recanted a prior statement made in earlier sworn testimony at a previous trial or hearing; thus, the State could be charged with knowing that the witness would do the same in the instant case and have the subjective *primary* intent of placing otherwise inadmissible substantive evidence before the jury. The court also noted that the cases tended to use a balancing approach under TEX.R.CRIM. EVID. 403 to determine whether allowing such "impeachment" would be more prejudicial than probative.

It is arguable that the State's sole purpose in calling Dukes as a witness in the present case was to introduce his earlier hearsay statement to Officer Smart that Braggs had told him that he was part of the robbery. There is no indication of surprise by the State at Dukes' testimony, as shown by Officer Smart's testimony about a conversation between Dukes, himself, and the district attorney immediately prior to trial. However, until Dukes testified under oath, the record does not show that he had actually recanted his statement. Although the officer testified that Dukes had been more "recalcitrant" in the pretrial interview than when he first talked to him, this testimony does not clearly show that the State should have known that his story had changed in such a substantial fashion.

 In summary, the testimony was admissible under these facts, but only for the limited purpose of impeaching the witness, Dukes. Thus, counsel erred by failing to request a limiting instruction, and without such limitation the admission of this evidence cannot be a ground for complaint on appeal. TEX.R.CRIM. EVID. 105.

Braggs does not contend that his counsel's representation was ineffective for this reason, however. Instead, he argues that he received ineffective assistance of counsel "when trial counsel failed to object to the purported admission by a party opponent as violative of his right to equal protection under Art. I, Sec. 3 of the Texas Constitution." It is not clear what Braggs' specific contentions are regarding how his rights of equal protection were violated, and he cites no authority for his position. We cannot say there is a reasonable probability that counsel's failure to make this specific objection caused an improper result of the trial. *McFarland*, 845 S.W.2d at 842.

As stated earlier, in determining whether counsel has provided effective assistance, courts look to the totality of the representation. Counsel's representation in this case was generally effective. He cross-examined witnesses with effect, provided reasonable alternatives to the State's version of the case, and attacked evidence connecting his client with the crime. His general representation did not fall below prevailing professional norms. Braggs' contentions are overruled.

The judgment of the trial court is affirmed.