The STATE of Texas, Appellant,

v.

Hermerejildo HERNANDEZ, Appellee.

No. 06–01–00064–CR.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 8, 2001.

Decided Nov. 30, 2001.

James P. Finstrom, Marion County/District Attorney, Jefferson, for appellant.

William K. Gleason, Attorney At Law, Jefferson, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

DONALD R. ROSS, Justice.

Hermerejildo Hernandez was indicted for money laundering in violation of TEX. PEN.CODE ANN. § 34.02 (Vernon 1994). The State appeals the trial court's granting of Hernandez' motion to suppress evidence.

On January 12, 2001, Harry Washington, a sergeant with the Ark–La–Tex Narcotics Task Force, planned a drug interdiction of a Greyhound bus at the bus station in Atlanta, Texas. However, the bus did not stop in Atlanta, but was subsequently pulled over by a police officer in Jefferson, forty miles from Atlanta. Washington testified he radioed ahead to the Jefferson Police Department and told them if they saw the driver of the bus violate any traffic

laws and the driver was stopped, he would like to do an interdiction. Donny Vallery, of the Jefferson Police Department, testified he received a message asking if he had seen the bus. He answered in the negative, but further testified that he later observed the bus speeding. Vallery stopped the bus in Jefferson around 7:00 p.m. and issued the driver a warning citation for speeding.

While the bus was stopped, Washington received the driver's permission to search the bus, but testified he had no suspicion any illegal activity was occurring on the bus. Washington and another narcotics officer entered the bus. Both officers wore plain clothes and their guns were not displayed. On entering the bus, they identified themselves as peace officers and displayed their badges.

Washington first checked the restroom and then began questioning the passengers at the rear of the bus. He advised the passengers he was on the bus to check for illegal narcotics, large sums of money that derived from illegal sales of narcotics, and weapons. He also asked to see the driver's licenses and tickets of the passengers.

Hernandez and his girlfriend, Norma Delacruz, were passengers on the bus. Washington testified that he was not suspicious of Hernandez when he began questioning him and that Hernandez answered his questions. Washington did not tell Hernandez he was free not to respond, nor did he tell Hernandez he could leave the bus. During their conversation, Hernandez acknowledged he had previously been arrested for large quantities of marihuana. Hernandez also told Washington he was headed from Memphis to Mercedes, but his ticket was from Texarkana to Houston.

Washington generally asked of the passengers in Hernandez' vicinity who owned the black bag in the overhead compartment across from Hernandez. Two passengers nearby said they thought the bag belonged to Hernandez. Hernandez and Delacruz denied ownership of the bag. Washington then sought to remove the bag from the bus as abandoned property. At this point, both Hernandez and Delacruz said the bag belonged to Hernandez. Washington and Hernandez exited the bus with the bag and then removed the rest of Hernandez' and Delacruz' bags from the bus. After obtaining their verbal consent, Washington searched the bags and, inside some tennis shoes, found two bundles containing cash in the total amount of $42,016.00.

Washington and Vallery were the only witnesses who testified at the suppression hearing. The trial court granted Hernandez' motion to suppress any and all tangible evidence seized by law enforcement officers or others in connection with the detention and arrest of Hernandez. The order granting the motion was silent as to the reasons it was granted, and the trial court provided no findings of fact or conclusions of law.

■ Generally, a trial court's ruling on a motion to suppress is reviewed by an abuse of discretion standard. *See Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Crim. App.1985). However, this case presents us with a question of law based on undisputed facts; therefore, we apply *de novo* review. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

■ In 1989, the United States Supreme Court held that random suspicionless questioning of bus passengers while they were on the bus at the bus station was not a per se violation of the passengers' Fourth Amendment rights. *Florida v. Bostick*, 501 U.S. 429, 439–40, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Bostick was arrested after two officers entered the bus

at the Fort Lauderdale bus station and proceeded without articulable suspicion to pick out Bostick and asked to inspect his ticket and identification. Though everything matched, the police asked to search Bostick's bags, to which Bostick consented. The police discovered contraband in one of Bostick's bags. *Id.* at 431, 111 S.Ct. 2382. Bostick contended that, because he was on the bus, he was not free to refuse consent, but the Court held that, so long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and no reasonable suspicion is required. *Id.* at 434, 111 S.Ct. 2382. The encounter only triggers Fourth Amendment scrutiny if it loses its consensual nature. *Id.* Mere police questioning does not constitute seizure. *Id.; Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The main difference between *Bostick* and this case is that in this case the police did not board the bus at a regularly scheduled stop, but boarded while the bus was lawfully stopped for a traffic violation. Although a passenger may not feel free to leave a bus that is stopped for a traffic violation, the Court in *Bostick* found this is not the test. The test is not whether a passenger feels free to leave, but rather whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter. *Bostick,* 501 U.S. at 436, 111 S.Ct. 2382. The officers are not required to advise a suspect of the right to refuse consent to a search. Whether the officer did so advise the suspect is only one factor in determining whether the encounter constitutes a seizure. *State v. Velasquez,* 994 S.W.2d 676, 679 (Tex.Crim.App.1999).

Hernandez contends the major difference between this case and the cases of *Bostick* and *Velasquez* is the location of the bus when the questioning took place.

He emphasizes the fact that the bus he was on was not at a scheduled bus stop at the time of the search and that there is a factual dispute as to what led to the driver of the bus being stopped. It is true that the testimonies of Washington and Vallery as to Washington's role in causing the driver of the bus to be stopped are not consistent. However, even assuming Washington's request to Vallery was the direct cause of the driver being stopped for a traffic violation, this fact is irrelevant so long as the driver of the bus was in fact committing a traffic violation. Vallery's testimony that the bus was exceeding the speed limit when he stopped the driver is undisputed. So long as the traffic violation itself constituted an objectively reasonable basis for the stop, any ulterior motive on the part of the officers was irrelevant. *Whren v. United States,* 517 U.S. 806, 810–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

That the officer stopping the driver of the bus was not the one who boarded the bus and conducted the interdiction is likewise irrelevant. Again, there is no dispute Vallery lawfully stopped the driver of the bus for speeding. Once the bus was stopped, the narcotics task force officers approached and asked the bus driver if they could check the bus, and the driver consented. This delayed the bus beyond the time required for writing the warning ticket. However, it is well settled that one of the exceptions to the warrant and probable cause requirements of the Fourth Amendment is a search conducted pursuant to consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854, 858 (1973); *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex. Crim.App.2000). Because the driver consented to the search of the bus, any delay not exceeding the scope of that consent is not a factor.

Hernandez contends this case falls between two United States Supreme Court cases, *Bostick* and *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). He first contends it is not like *Bostick*, as discussed above, because the bus was not at a regularly scheduled stop. He then contends this case is closer to the situation in *Edmond*. In *Edmond*, the Supreme Court found the city's roadblocks were set up to find drugs and the roadblocks were unconstitutional. "We have never approved a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing." *Id.*, 531 U.S. at 41, 121 S.Ct. 447. Hernandez contends the narcotics officers in this case established a de facto bus roadblock. In *Edmond*, the police were stopping the drivers of cars going through checkpoints regardless of whether they had violated any laws. This is not the case here; this was not a roadblock search. This was a search that occurred after a valid stop for a traffic law violation, and it only occurred after the driver of the bus gave consent to enter the bus. Once the driver gave the officers permission to enter the bus, the questioning of the passengers is like the questioning of passengers aboard a bus at a bus station. Looking at all of the circumstances surrounding the encounter, the conversation between Washington and Hernandez was consensual.

■■■ Hernandez contends that, if this search and seizure is upheld, the police could then establish de facto bus roadblocks at unscheduled stops by simply stopping the driver for any traffic law violation—no matter how slight—and then questioning the passengers, avoiding an inquiry into their subjective intent. However, under present law, there is nothing prohibiting law enforcement officers from stopping the driver of a passenger car for a traffic violation, gaining the driver's consent to search the car and, in the course of that search, questioning the passengers. Whether it is a bus or a passenger car that is lawfully stopped for a traffic offense, the driver is free to decline granting consent to search and the passengers are free to decline to answer questions by the police. Without consent of the driver of a vehicle, the police may not search it without a warrant or probable cause. *See Schneckloth*, 412 U.S. at 219–22, 93 S.Ct. 2041; *Carmouche*, 10 S.W.3d at 331.

■■■ Whether a seizure occurs depends on the totality of the circumstances surrounding the encounter. *Bostick*, 501 U.S. at 437, 111 S.Ct. 2382; *Velasquez*, 994 S.W.2d at 679. In this case, the police lawfully stopped the driver of the bus for a traffic violation and gained lawful consent to enter the bus. Once on the bus, the evidence presented indicates the police did not intimidate the passengers. They were in plain clothes, and their guns were not showing. That Washington did not tell Hernandez he did not have to cooperate is just one factor in determining whether the encounter constituted a seizure. *Velasquez*, 994 S.W.2d at 679. Only Washington interviewed Hernandez, and there is no evidence showing he in any way prevented Hernandez from disregarding him or intimidated Hernandez into answering the questions. Hernandez did not testify at the hearing on the motion to suppress and did not call any witnesses to testify that what occurred on the bus was different from that related by Washington.

The stopping of the driver of the bus was lawful, the officers entered the bus with the driver's consent, Hernandez answered Washington's questions, and he consented to the officers' search of his bags. No Fourth Amendment violation has been shown.

We sustain the State's point of error. The trial court erred in granting the motion to suppress. We reverse and remand for further proceedings.

BEN Z. GRANT, Justice, concurring.

The undisputed evidence offered at the suppression hearing indicates that the search of the bus was consensual. No evidence was offered to show that the consent by the bus driver and Hernandez were brought about by intimidation.

A defendant can testify at a suppression hearing on the limited matter of the search without waiving his Fifth Amendment right. A defendant cannot be made to give up one constitutional right in order to serve another. *Crosson v. State*, 36 S.W.3d 642 (Tex.App.—Houston [1st Dist.] 2000, no pet.). Thus, Hernandez was not prevented from offering testimony concerning the search and consent at the suppression hearing.