In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-02-00169-CR
______________________________


MURPH OMAR McNAUGHTON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 5th Judicial District Court
Cass County, Texas
Trial Court No. 2002-F-00100


                                                 



Before Morriss, C.J., Ross and Cornelius,* JJ.
Opinion by Justice Ross
William J. Cornelius, C.J., Retired, Sitting by Assignment


O P I N I O N

          Murph Omar McNaughton was convicted in a jury trial for aggravated possession
of cocaine.


 The jury assessed punishment at twenty years' imprisonment and a
$10,000.00 fine.
          McNaughton challenged the admission of a written confession he made during
custodial interrogation on the ground the statement was involuntary. The trial court
conducted a hearing on the motion to suppress and heard testimony from McNaughton
and the arresting officer. The court denied the motion to suppress, but failed to file an
order stating its conclusion as to whether the statement was voluntarily made, along with
specific findings of fact on which the conclusion was based. We abated this appeal and
remanded the cause to the trial court for compliance with Tex. Code Crim. Proc. Ann.
art. 38.22, § 6 (Vernon Supp. 2004) and Garcia v. State, 15 S.W.3d 533 (Tex. Crim. App.
2000). McNaughton v. State, No. 06-02-00169-CR (Tex. App.—Texarkana Sept. 10, 2003,
order) (not designated for publication) (order to abate on appeal). Because the judge who
presided at the hearing on McNaughton's motion to suppress and at McNaughton's trial on
the merits has since ascended to the appellate bench, the succeeding judge conducted a
new hearing on the voluntariness of McNaughton's written confession. The trial court
signed an order concluding that McNaughton's statement was voluntary and admissible,
based on specific findings of fact.
          We now address McNaughton's points of error.


 McNaughton contends the trial
court erred by: (1) not granting his motion to suppress the cocaine; (2) not granting his
motion to suppress his written statement; (3) improperly dismissing two jury members after
they were impaneled and sworn; and (4) submitting punishment to the jury. McNaughton
also contends there was insufficient evidence to establish he had actual care, custody, and
control of the cocaine. We overrule these contentions and affirm the judgment.
Factual Background
          On February 8, 2002, McNaughton was traveling by bus from Houston, Texas, to
Memphis, Tennessee. The bus made its regular stop at the terminal in Linden, Texas,
where Officer Harry Washington, with the Ark-La-Tex Narcotics Task Force, was
conducting drug interdiction. Washington conducted the interdiction by asking the
passengers for their bus tickets and identifications, and informing them he was searching
for illegal narcotics, large sums of money, and weapons. After conducting several
interviews, Washington approached McNaughton and received consent to search his black
tote bag located on the seat next to him. Washington found a white powder residue on
some clothing inside the bag. Washington continued his search and discovered two large
bundles underneath McNaughton's seat. No one claimed ownership of the bundles. 
McNaughton was detained, and after further questioning of some of the other passengers,
he was read his Miranda


 rights and transported to the police station. After arriving at the
jail, McNaughton was read his rights again, whereupon he gave a written statement
confessing to possession of the cocaine. Ruben A. Rendon, Jr., a criminalist with the
Texas Department of Public Safety, testified the bundles seized underneath McNaughton's
seat contained just under 1,000 grams of cocaine. 
Motion to Suppress Cocaine
          McNaughton contends the cocaine was seized through an illegal detention which
was not supported by reasonable suspicion. He contends that, when Washington
identified himself as a law enforcement official and asked permission to search his bag, it
was a display of authority such that a reasonable person would have believed he or she
was not free to leave the scene. This detention, McNaughton submits, violated his Fourth
Amendment rights because it was not supported by reasonable suspicion. 
          The ruling of a trial court on a motion to suppress evidence will not be set aside
absent a showing of abuse of discretion. Maddox v. State, 682 S.W.2d 563, 564 (Tex.
Crim. App. 1985); Jackson v. State, 968 S.W.2d 495, 498 (Tex. App.—Texarkana 1998,
pet. ref'd); Braggs v. State, 951 S.W.2d 877, 880 (Tex. App.—Texarkana 1997, pet. ref'd). 
On a motion to suppress evidence, the trial court is the sole and exclusive trier of fact and
the judge of the credibility of witnesses, including the weight to be given their testimony.
Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991); Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). Thus, the trial court is free to believe or
disbelieve the testimony of any witness. This Court does not engage in its own factual
review. Braggs, 951 S.W.2d at 880. Viewing the evidence in the light most favorable to
the trial court's ruling, we consider only whether the trial court improperly applied the law
to the facts. Romero, 800 S.W.2d at 543; Braggs, 951 S.W.2d at 880. If the trial court's
findings are supported by the record, this Court is not at liberty to disturb them. Etheridge
v. State, 903 S.W.2d 1, 15–16 (Tex. Crim. App. 1994); Upton v. State, 853 S.W.2d 548,
556–57 (Tex. Crim. App. 1993); Cantu v. State, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).
          Police officers do not violate the Fourth Amendment by merely approaching an
individual in public to ask questions. Such an encounter does not require any justification
whatsoever on the part of an officer. United States v. Mendenhall, 446 U.S. 544, 555
(1980); Hunter v. State, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). Even when officers
have no basis to suspect an individual, they may ask questions of that individual, ask to
examine that person's identification, and request to search such person's luggage, so long
as the police do not by their actions actually inform the person that compliance with their
requests is required. Florida v. Bostick, 501 U.S. 429, 434–35 (1991); Hunter, 955 S.W.2d
at 104. A seizure of the person occurs when the officer, by means of physical force or
show of authority, has in some way restrained the liberty of a citizen. Bostick, 501 U.S. at
434. In determining whether a seizure of the person has occurred for Fourth Amendment
purposes, a court must consider the totality of the circumstances surrounding the
encounter. Id. at 439; Hunter, 955 S.W.2d at 104. 
          The inquiry under these circumstances is not whether a reasonable person would
have believed he was free to leave the scene, as McNaughton suggests, but as first
pronounced by the United States Supreme Court in Bostick, 501 U.S. at 436, whether a
reasonable person would feel free to decline the officer's requests or otherwise terminate
the encounter. As the Supreme Court noted, a passenger on a bus that is scheduled to
depart would not feel free to leave the bus even if the police had not been present. Id. at
436. A passenger's movements are "confined" in a sense, but this is the natural result of
his or her decision to take the bus; it says nothing about whether the police conduct at
issue was coercive. Id. The crucial test is whether, taking into account all of the
circumstances surrounding the encounter, the police conduct would have communicated
to a reasonable person he or she was not at liberty to ignore the police presence and go
about his or her business. Id.; State v. Velasquez, 994 S.W.2d 676, 679 (Tex. Crim. App.
1999); Hunter, 955 S.W.2d at 104; Jackson v. State, 77 S.W.3d 921, 927 (Tex.
App.—Houston [14th Dist.] 2002, no pet.).
          McNaughton contends he was detained when Washington identified himself as a
police officer and asked consent to search his bag. The Texas Court of Criminal Appeals
expressly rejected this same contention in Hunter, 955 S.W.2d at 104, where the court
found that an encounter between a citizen and officers is not rendered a "detention" simply
by virtue of the fact the officers ask for identification and consent to search. Rather, the
court found that the dispositive question is whether the officers conveyed a message that
compliance with their requests was required. Id. at 104–06. A closer look at all of the
circumstances in this case is therefore necessary to make a determination.
          Several facts are noteworthy in deciding whether Washington conveyed a message
that compliance with his requests was required. Washington began by questioning the
passengers at the rear of the bus. He advised each passenger he was on the bus to check
for illegal narcotics, large sums of money that derived from illegal sales of narcotics, and
weapons. He then asked to see their driver's licenses and tickets. He was dressed in plain
clothes, and his weapon was concealed throughout the encounter. Washington did not
affirmatively state he believed McNaughton was carrying drugs. Nor did Washington
suggest he would get a search warrant or narcotics dog if McNaughton did not permit him
to look in the bag. See Mitchell v. State, 831 S.W.2d 829, 833 (Tex. App.—Houston [1st
Dist.] 1992, pet. ref'd) (holding detention occurs when officer threatens to use narcotics
dog). Washington did not tell McNaughton that he was free not to respond or that he could
leave the bus. However, officers are not required to advise a suspect of the right to refuse
consent to a search, and the failure to so advise is only one factor in determining whether
the encounter constitutes a seizure. Velasquez, 994 S.W.2d at 679; State v. Hernandez,
64 S.W.3d 548, 551 (Tex. App.—Texarkana 2001, no pet.). There is nothing in these facts
that conveyed a message that McNaughton was required to comply with Washington's
requests. Under the totality of the circumstances, a reasonable person would have felt free
to terminate the encounter. 
          In addition, no one claimed ownership of the bundles of cocaine found under
McNaughton's seat. The Fourth Amendment does not protect property that has been
voluntarily abandoned. Abel v. United States, 362 U.S. 217, 241 (1960). When officers
seize abandoned property that has been voluntarily abandoned, no violation of the Fourth
Amendment occurs. Hawkins v. State, 758 S.W.2d 255, 257 (Tex. Crim. App. 1988). 
Voluntary abandonment occurs if the defendant intended to abandon the property and the
decision to abandon the property was not induced by police misconduct. Brimage v. State,
918 S.W.2d 466, 507 (Tex. Crim. App. 1994) (op. on reh'g). There is no evidence the
bundles were abandoned as a result of police misconduct. As abandoned property,
Washington was free to retrieve the bundles and inspect their contents. Velasquez, 994
S.W.2d at 679 (drugs found in defendant's abandoned luggage not subject to Fourth
Amendment protections); see also Mouton v. State, 101 S.W.3d 686, 691 (Tex.
App.—Texarkana 2003, no pet.) (officer free to examine abandoned envelope). 
Accordingly, no Fourth Amendment violation occurred as a result of Washington seizing
the bundles. 
          For those reasons, McNaughton's first point of error is overruled.
 

Motion to Suppress Written Statement 
          McNaughton contends the trial court erred by allowing the introduction of his written
statement because it was not established it was given freely and voluntarily. At the
suppression hearing, McNaughton contended his statement was involuntary because he
was coerced by Washington, because he was not mentally competent to give the
statement, and because of a language barrier he did not understand the nature of the
confession he was giving. 
          Our review of the trial court's ruling on McNaughton's motion to suppress the
cocaine, as outlined above, applies equally to the motion to suppress his written statement. 
We therefore view the evidence in the light most favorable to the trial court's ruling and
consider only whether the trial court improperly applied the law to the facts. Romero, 800
S.W.2d at 543; Braggs, 951 S.W.2d at 880. If the trial court's findings are supported by
the record, this Court is not at liberty to disturb them. Etheridge, 903 S.W.2d 1; Upton, 853
S.W.2d 548; Cantu, 817 S.W.2d at 77. 
          The law surrounding the issue of the voluntariness of a statement is well
established. A statement is involuntary if the record reflects "official, coercive conduct of
such a nature that any statement obtained thereby was unlikely to have been the product
of an essentially free and unconstrained choice by its maker." Alvarado v. State, 912
S.W.2d 199, 211 (Tex. Crim. App. 1995). The voluntariness of a confession is determined
by considering the totality of the circumstances under which the statement was obtained. 
Creager v. State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997); Penry v. State, 903
S.W.2d 715, 744 (Tex. Crim. App. 1995). Relevant circumstances have included the
length of detention, incommunicado or prolonged interrogation, refusing a defendant's
request to telephone a lawyer or family, and physical brutality. Armstrong v. State, 718
S.W.2d 686, 693 (Tex. Crim. App. 1985). Also relevant are whether the accused was
mentally impaired in such a manner as to reduce his or her ability to resist (see Sosa v.
State, 769 S.W.2d 909, 915 (Tex. Crim. App. 1989)), the accused's literacy (see Westley
v. State, 754 S.W.2d 224, 229 (Tex. Crim. App. 1988)), and whether the accused was
intoxicated (see Nichols v. State, 754 S.W.2d 185, 190–91 (Tex. Crim. App. 1988)). In
addition, a suspect's statement is involuntary if it is induced by a promise that was: 
(1) positive; (2) of some benefit to the suspect; (3) made or sanctioned by someone in
authority; and (4) of such an influential nature that a defendant would speak untruthfully
in response. Creager, 952 S.W.2d at 856; Blanks v. State, 968 S.W.2d 414, 421 (Tex.
App.—Texarkana 1998, pet. ref'd). The ultimate question, however, in determining
voluntariness is whether the suspect's will was overborne. Creager, 952 S.W.2d at 856.
          The statement McNaughton provided to the authorities was written and signed by
him, and contained the required warnings at the head of the document in compliance with
Tex. Code Crim. Proc. Ann. art. 38.22 (Vernon Supp. 2004). It provided as follows: "I
went to Houston Texas and my friend gave me a key of cocaine for $20,000.00 that he get
[sic] from the Mexican and say [sic] he would split the profit with me and I was on the
Greyhound Bus when I had the two bags of cocaine under the seat. I had remove [sic] it
from my tote bag." 
          At the suppression hearing, McNaughton, of Jamaican descent, testified that, when
he was questioned at the police station, Washington told him he was in "redneck country"
and that he was "going to get life." McNaughton testified the only reason he gave the
written confession was because Washington told him he was "better off writing a statement
to say it's mine," and that, if he cooperated and wrote a statement, Washington would let
him go. McNaughton further testified regarding his mental incapacities and confinement
in a mental institution.
          Washington testified McNaughton was read his Miranda rights both before being
taken to the police station and then again at the station before questioning. McNaughton
stated that he understood those rights and that he wanted to cooperate. McNaughton
gave his written statement and then stated he wanted to cooperate by going back to
Houston to purchase more cocaine. Washington testified that at no time did he promise
McNaughton anything in exchange for his statement or threaten him with life imprisonment. 
He further testified McNaughton appeared to be of sound mind and could read and write
the English language.
          The trial court concluded McNaughton's statement was "made voluntarily, that the
Defendant was aware of his rights, particularly his right to remain silent, and that he
voluntarily waived those rights prior to giving the statement in issue." The court based that
conclusion on the following findings of fact: 
1.       Although the Defendant has testified that he has been confined in a
mental institution and produced medical records at the hearing
substantiating that claim, the Defendant was nevertheless able to
make and file with the court on February 12, 2002, certain motions,
pro se, including a Motion to Suppress Statement, Motion for
Discovery, Motion to Reduce Bond, and Motion to Reduce the Degree
of Felony. The statement at issue was made on February 8, 2002,
less than four days before the Defendant filed these pro se motions. 
The motions are detailed, citing specific sections of the Code of
Criminal Procedure. 
 
          . . . .
 
5.       Beginning less than four days after signing the statement in issue,
and continuing for the next two months, Defendant filed the above-mentioned pro se motions indicating a specific awareness of the
nature of the charges against him and the consequences of his action
in signing the statement. 
 
          . . . .
 
7.       At the hearing, in judging the Defendant's demeanor, the Court
observed that he mumbled and parts of his testimony were inaudible
despite the fact that he exhibited a strong command of the English
language in his various pleadings and letters to the Court. Based on
this contradiction, the Court believes that the Defendant was
attempting to make it appear at the hearing that his mental capacity
is limited in order to support his claims.
 
          . . . .
 
12.     The Court finds that the Defendant's claims that he signed the
statement admitting to possession of the illegal drugs so that he
would avoid being convicted for possession of the illegal drugs is not
credible, and is in fact, ludicrous. 
 
13.     The Court finds that the testimony of Sgt. Harry Washington of the
Narcotics Task Force was credible. The Court finds that consistent
with Sgt. Washington's testimony, that the Defendant had been
Mirandized at least twice before he made the statement, and that the
statement itself contains the Miranda warnings immediately above the
place where the Defendant stated what happened. 
 
14.     The Court further finds from Sgt. Washington's testimony that
immediately after signing the statement, the Defendant attempted to
further help himself by offering to continue the drug transaction to its
intended destination so that the Task Force could arrest other
accomplices involved in the matter. This demonstrates to the Court,
and the Court so finds, that the Defendant knew what his rights were
and appreciated the consequences of his actions before signing the
statement. 
 
15.     Based on all of the foregoing, the Court finds that the Defendant had
full knowledge of what he was doing, the consequences of signing the
statement, that he was mentally competent, that he was not under the
influence of any drug or alcohol, that he was not mentally impaired,
that he understood the nature of his rights, that he voluntarily
relinquished those rights, and that he voluntarily gave the statement
to the police officers. 
 
           McNaughton's complaints on appeal are purely matters of witness credibility and
demeanor. This is true regarding his contentions that he was coerced into making the
statement on the promise he would go free, that he was not mentally competent to give the
statement, and because of the language barrier he did not understand the nature of the
confession he was giving. The trial court made specific findings of fact that these
contentions were not true. Washington's testimony, the pleadings before the court, and
McNaughton's testimony support these findings of fact. Washington testified that at no
time did he promise McNaughton anything in exchange for his statement. The trial court
was free to regard Washington's testimony as the credible testimony. In addition,
McNaughton filed numerous motions pro se with the court indicating he understood the
English language and was not mentally impaired in such a manner as to reduce his ability
to resist. We therefore will not disturb the trial court's findings of fact. Nothing in the
totality of these circumstances suggests McNaughton's statement was made involuntarily.
Legal and Factual Sufficiency of the Evidence 
          Now that the propriety of the evidence before the trier of fact has been determined,
we can determine its sufficiency. McNaughton contends the evidence is insufficient to
support his conviction. He contends there were insufficient affirmative links to establish
he was guilty beyond a reasonable doubt of possession of the cocaine found underneath
his seat. He contends the State merely established he was present in the vicinity of the
cocaine. 
          In our review of the legal sufficiency of the evidence, we employ the standards set
forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the
relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our
review, we evaluate all the evidence in the record, both direct and circumstantial, whether
admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 
          In contrast, a factual sufficiency review dictates that the evidence be viewed in a
neutral light, favoring neither party. Johnson, 23 S.W.3d at 7; see Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). In determining the factual sufficiency of the
evidence to establish the elements of the offense, we view all the evidence in a neutral light
and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. Johnson, 23 S.W.3d at 7; Clewis, 922 S.W.2d at 129. 
          To support a conviction for possession, the state must show that the accused
exercised actual care, custody, or control over the substance, that he or she was conscious
of his or her connection with it, and that the accused possessed the substance knowingly
or intentionally. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); Roberts v.
State, 963 S.W.2d 894, 898 (Tex. App.—Texarkana 1998, no pet.). The evidence on
these elements can be direct or circumstantial. Brown, 911 S.W.2d at 747. The state
must establish that the accused's connection with the substance was more than just
fortuitous. Id. When the contraband is not found on the accused's person or it is not in his
or her exclusive possession, additional facts must affirmatively link the accused to the
contraband. McMillon v. State, 940 S.W.2d 767, 768–69 (Tex. App.—Houston [14th Dist.]
1997, pet. ref'd); Menchaca v. State, 901 S.W.2d 640, 651 (Tex. App.—El Paso 1995, pet.
ref'd); Green v. State, 892 S.W.2d 220, 222 (Tex. App.—Texarkana 1995, pet. ref'd). The
link, however, need not be so strong that it excludes every other reasonable hypothesis
except the defendant's guilt. Brown, 911 S.W.2d at 748. The affirmative link ordinarily
emerges from an orchestration of several factors and the logical force they have in
combination. Villegas v. State, 871 S.W.2d 894, 896 (Tex. App.—Houston [1st Dist.] 1994,
pet. ref'd).
          Some factors on which various courts have relied to provide this affirmative link
include: (1) the place where the contraband was found was enclosed; (2) the contraband
was conveniently accessible to the accused; (3) the accused was the owner of the place
where the contraband was found; (4) the quantity of the drugs found; (5) the accused
possessed a key to the locked location of the drugs; (6) a tip by an informant that the
accused was in possession of contraband; (7) the accused was in close proximity to a
large quantity of contraband; (8) drug paraphernalia was found on or in plain view of the
accused; (9) whether the defendant made incriminating statements when arrested; and
(10) whether there was an odor of contraband. See Washington v. State, 902 S.W.2d 649,
652 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd); Green, 892 S.W.2d at 222; Chavez
v. State, 769 S.W.2d 284, 288–89 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). The
number of the factors is not as important as the logical force the factors have in
establishing the elements of the offense. Gilbert v. State, 874 S.W.2d 290, 298 (Tex.
App.—Houston [1st Dist.] 1994, pet. ref'd). 
            McNaughton contends that the State failed to show facts and circumstances which
affirmatively link him to the cocaine and that the State merely established he was present
in the vicinity of the cocaine. There are significant factors, however, linking McNaughton
to knowledge and control of the cocaine. The cocaine was discovered underneath
McNaughton's seat, with no one sitting in front of, behind, or next to him on the bus. He
was in close proximity to a large quantity of cocaine, and it was conveniently accessible to
him. In addition, a white powder residue was discovered inside McNaughton's tote bag. 
Further, McNaughton provided a written statement he knowingly exercised custody and
control of the cocaine. On review of the record, we find legally and factually sufficient
evidence to support McNaughton's conviction.
Dismissal of Two Venire Members
          McNaughton contends the trial court committed reversible error by failing to follow
the requirements of Article 35.26 of the Texas Code of Criminal Procedure. That article
provides in pertinent part:
When the parties have made or declined to make their peremptory
challenges, they shall deliver their lists to the clerk. Except as provided in
Subsection (b) of this section, the clerk shall, if the case be in district court,
call off the first twelve names on the lists that have not been stricken. . . .
Those whose names are called shall be the jury. 
 
Tex. Code Crim. Proc. Ann. art. 35.26(a) (Vernon Supp. 2004). McNaughton contends
reversal is warranted because the trial court violated mandatory provisions of the statute. 
He contends the trial court improperly discharged two jurors after they had been sworn and
impaneled. 
          The record reflects a different story. The record reflects that, during the seating of
the jury panel, the court clerk began calling off the names of jurors to be seated on the jury. 
The State objected, stating there was some kind of error, because two jurors on which it
had exercised peremptory strikes were called to be seated on the jury. The clerk
recognized the error and stated she had overlooked the peremptory strikes of the State. 
The trial court called a halt to the seating of the jury and asked the clerk to review the
strikes. She did so, and taking into account the State's peremptory strikes, seated the jury. 
They were then, only after the jury had been properly seated, sworn and impaneled. 
          A violation of Article 35.26 per se does not constitute reversible error. See Griffin
v. State, 481 S.W.2d 838, 840 (Tex. Crim. App. 1972). Rather, we are to consider the
spirit and intent of the article under the facts of the case. Id. 
          Under the facts of this case, it was not reversible error for the trial court to halt the
seating of the jury to properly take into account the peremptory strikes of the State. Texas
courts have concluded that a trial court has the authority to excuse jurors for a proper basis
at any point up to the time the jury is sworn in as a whole and impaneled. Brossette v.
State, 885 S.W.2d 841, 843 (Tex. App.—Dallas 1994, pet. ref'd) (finding trial court had
authority to excuse two jurors for cause after names of jurors were called, but before they
were sworn and impaneled). The trial court had authority to excuse both jurors until the
time the jury was sworn and impaneled. McNaughton's point of error is overruled. 
Assessment of Punishment 
          In his final point of error, McNaughton maintains the trial court erred by allowing the
jury to assess punishment. 
          McNaughton filed a motion for the jury to assess punishment, along with a motion
for community supervision. The clerk's file mark indicates receipt of the motions at 9:57
a.m. on the morning of the trial. After the jury returned a guilty verdict, McNaughton
objected that his motion for the jury to assess punishment was untimely and submitted that
the trial court must set the punishment. The trial court overruled, citing Tex. Code Crim.
Proc. Ann. art. 37.07, section 2(b), and the court's understanding that McNaughton's
election was filed before commencement of the voir dire examination of the jury panel. 
McNaughton then moved to change his election and have the court assess punishment. 
The prosecutor denied the consent necessary for that change. 
          McNaughton contends his election was untimely, unsworn, and, therefore, the trial
court should have assessed punishment. The Code of Criminal Procedure provides as
follows:[I]f a finding of guilty is returned, it shall then be the responsibility of the judge
to assess the punishment applicable to the offense; provided, however, that
(1) in any criminal action where the jury may recommend probation and the
defendant filed his sworn motion for probation before the trial began, and
(2) in other cases where the defendant so elects in writing before the
commencement of the voir dire examination of the jury panel, the
punishment shall be assessed by the same jury, . . . . If a finding of guilty is
returned, the defendant may, with the consent of the attorney for the state,
change his election of one who assesses the punishment. 
 
Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b) (Vernon Supp. 2004). There is no
requirement that the election for the jury to assess punishment be sworn. The motion for
community supervision must be sworn, but that requirement was complied with in this case. 
McNaughton signed a sworn affidavit attached to the motion for community supervision.
          The record reflects that his election was also timely. The written election must be
made "before the commencement of the voir dire examination of the jury panel, . . . ." Id. 
This is a change from the former language of Section 2(b), which stated that the election
had to be made at the time the defendant entered his or her plea in open court. Teubner
v. State, 742 S.W.2d 57, 58 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd). The record
shows that McNaughton's election for jury punishment was filed before commencement
of the voir dire examination of the jury panel. The record does not affirmatively show when
the voir dire examination began and whether it started before or after 9:57 a.m., but during
the voir dire examination defense counsel questioned the jury panel on whether they could
consider community supervision as McNaughton had "just filed a pre-trial motion asking
to be probated in the event he is found guilty . . . ." Defense counsel later questioned the
panel on whether they could consider the entire range of punishment including community
supervision because McNaughton "want[s] the jury to assess his punishment." Therefore,
from the record, it appears McNaughton filed his motions before commencement of the voir
dire examination and the trial court properly submitted punishment to the jury.
 

Conclusion
          McNaughton's contentions are overruled. We affirm the judgment.
 

                                                                           Donald R. Ross
                                                                           Justice 

Date Submitted:      December 22, 2003
Date Decided:         February 26, 2004

Do Not Publish